(April 18, 1921.)

ELVIN ADAMS, Respondent, v. CALDWELL MILLING
& ELEVATOR COMPANY, a Corporation, Doing
Business at Weiser, Idaho, Under the Firm Name of
WEISER MILLING & ELEVATOR COMPANY, Appellant.

[197 Pac. 723.]

CHATTEL MORTGAGE—GROWING CROP—SEVERANCE—SALE—CONVERSION
—LIABILITY OF PURCHASER TO MORTGAGEE — FORECLOSURE BY
NOTICE AND SALE—REASONABLE ATTORNEY'S FEE.

1. A mortgage on a growing crop duly recorded is valid as
against one who purchases the crop from the mortgagor after
severance.

2. One who purchases such a crop from the mortgagor without the consent of the mortgagee is liable to the mortgagee in
conversion for the reasonable value of the crop so purchased,
up to the amount due and unpaid on the mortgage.

APPEAL from the District Court of the Seventh Judicial District, for Washington County. Hon. Ed. L. Bryan,
Judge.

Action for conversion. Judgment for plaintiff. *Affirmed.*

Scatterday & Van Duyn and Stone & Jackson, for Appellant.

Plaintiff waived his right to a lien and is estopped from
asserting his lien as against this defendant by reason of
his failure to assert his rights when he knew the grain was
being taken to market and when, by his failure to so act,
he permitted the defendant to buy and pay for the grain.
(*Knollin v. Jones,* 7 Ida. 466, 63 Pac. 638; *Ryan v. Rogers,*
14 Ida. 309, 94 Pac. 427; *Sigel-Campion Livestock Co. v.
Holly,* 44 Colo. 580, 101 Pac. 68; *Ziegler v. Ilfeld,* 52 Colo.

1. Effect of severance of growing crops from land on lien under
chattel mortgage, see note in 18 Am. St. 770.

On the question of sale or mortgage of future and growing crops,
see notes in 23 L. R. A. 449; L. R. A. 1917C, 8.

275, Ann. Cas. 1913D, 583, 122 Pac. 56; 11 Corpus Juris, Chattel Mortgages, sec. 339.)

The mortgagee of a growing crop loses his lien by allowing the crop to be removed from the land on which it was grown, thereby removing the means of identifying the property. (5 R. C. L. 444, sec. 78; *Brande v. A. L. Babcock Hardware Co.*, 35 Mont. 256, 119 Am. St. 858, 88 Pac. 949; *Gillilan v. Kendall & Smith*, 26 Neb. 82, 18 Am. St. 766, 42 N. W. 281.)

Ed. R. Coulter, for Respondent.

"The mortgage vested the title of the growing wheat in the mortgagee, and the recording of it created constructive notice as against a subsequent purchaser or attaching creditor. The lien follows the grain after severance and removal, and the money after sale, whether such removal be by the mortgagor or by a third person, and whether the removal be rightful or tortious. The change which it underwent did not change the property so as to divest the title of the mortgagee or to prevent its identification." (Jones on Chattel Mortgages, par. 69; *Hansen v. Haley*, 11 Ida. 278, 81 Pac. 935; *McConnell v. Langdon*, 3 Ida. 157, 28 Pac. 403.)

McCARTHY, J.—One Reid executed a chattel mortgage on November 10, 1913, to respondent, securing an indebtedness of $400 due November 10, 1914, with seven per cent interest, and covering a crop of grain to be grown on certain land, the mortgagor to retain possession until maturity of the indebtedness. After threshing the grain, and before the maturity of the note and mortgage, Reid hauled part away and sold it to appellant. It was of the reasonable value of $343.84. In November, 1914, the debt having matured, and being unpaid, respondent foreclosed the chattel mortgage by notice and sale and sold other property covered by it; after paying the expenses of foreclosure, $15.15 was credited on the debt secured by the mortgage, leaving a balance of $412.85. On learning that appellant had bought the grain,

respondent demanded that it be returned to him or that he be paid its value, and appellant refused. Respondent brought action for conversion and recovered the reasonable value of the grain with seven per cent interest from the time of the alleged conversion.

Appellant contends, first, that the record of the mortgage gave no constructive notice to appellant of respondent's lien on the wheat after it was severed and removed from the premises; second, that respondent lost his lien because, upon being informed that Reid was removing the grain, he did not prevent it; third, that an attorney fee should not have been allowed on the foreclosure by notice and sale.

Chattel mortgages may be made upon growing crops and upon crops to be sown and grown in the future. When duly recorded, such a mortgage is notice to all persons claiming to have acquired rights in or to the mortgaged crop through or under the mortgagor, subsequent to the recording of the mortgage. (C. S., sec. 6373; *Shields v. Ruddy,* 3 Ida. 148, at 154, 28 Pac. 405; *Pierce v. Langdon,* 3 Ida. 141, 28 Pac. 401; *McConnell v. Langdon,* 3 Ida. 157, 28 Pac. 403.) The lien follows the grain after severance and removal and is valid against a purchaser from the mortgagor. (Jones on Chattel Mortgages, 5th ed., sec. 69; *Edreson v. Larson,* 101 Minn. 417, 118 Am. St. 631, 112 N. W. 628; *Keel v. Levy,* 19 Or. 450, 24 Pac. 253; *Phillip Best Co. v. Pillsbury etc. Co.,* 5 Dak. 62, 37 N. W. 763; *Smith v. Taber,* 46 Hun (N. Y.), 313.) The Montana case of *Brande v. A. L. Babcock Hardware Co.,* 35 Mont. 256, 119 Am. St. 858, 88 Pac. 949, is not in point, because the Montana statute, unlike ours, provides that the lien of a mortgage on a growing crop continues after severance only so long as the same remains on the land of the mortgagor. We approve the majority view above set out rather than the minority view expressed in *Gillilan v. Kendall et al.,* 26 Neb. 82, 18 Am. St. 766, 42 N. W. 281.

There is no evidence that the respondent consented to the sale so as to bring the case within the doctrine of

*Knollin v. Jones,* 7 Ida. 466, 63 Pac. 638.   The evidence shows that while away on a threshing trip he was informed that Reid was hauling grain to town; that shortly thereafter he went to Caldwell and made inquiries of the appellant's manager.   It is not proved that he expressly consented to the sale, and an inference that he impliedly consented is not justified by the evidence.   On the contrary, the evidence sustains the court's finding that the sale was without his consent.

The appellant alleges that the sale brought the sum of $71.30 over the amount of the principal, interest and costs of foreclosure, and that this amount should have been credited instead of $15.15.   Appellant also alleges that $40 was allowed as a reasonable attorney fee on the sale, and contends that an attorney fee cannot be allowed on foreclosure by notice and sale unless a fixed amount is stipulated in the note and mortgage.   We do not pass upon this question because, in view of the facts, it is unnecessary to do so. The amount due for principal and interest at the date of the sale was a little more than $428.   If the appellant's contention that $71.30 should have been credited is correct, even then the amount of the deficiency would be greater than the value of the grain, which was the basis of the judgment against this appellant.   It is thus clear that the appellant was not prejudiced.

The judgment is affirmed, with costs to respondent.

Rice, C. J., and Budge, Dunn and Lee, JJ., concur.