[No. 19875.   Department Two.   August 16, 1926.]

ELLEN M. STUHLMILLER, *Plaintiff and Respondent,* v.
ADOLPH J. STUHLMILLER, *Defendant,* C. M. KOPP
COMPANY, *Intervener and Appellant.*[1]

[1] CHATTEL MORTGAGES (3)—PROPERTY SUBJECT—GROWING CROPS—
STATUTES—CONSTRUCTION. Under Rem. Comp. Stat., § 3779, allow-
ing the mortgaging of "growing" crops, and crops before the
seed thereof shall have been sown or planted for not more than
one year in advance, a chattel mortgage upon an apple crop made
November 2, 1923, mortgaging the crop for 1924, is void; and
it cannot be sustained by expert testimony as to the formation
of fruit buds prior to November, for the following year; since
there can be no growing crop on fruit trees within this act,
prior to the preceding dormant winter period.

[2] EVIDENCE (3)—JUDICIAL NOTICE—COURSE AND LAWS OF NATURE.
The courts can judicially notice that fruit trees in this state
undergo through the winter months a period of dormant life.

Appeal from a judgment of the superior court for
Yakima county, Nichoson, J., entered September 5,
1925, upon findings in favor of the plaintiff in an ac-
tion to foreclose a chattel mortgage, tried to the court.
Affirmed.

*McAulay & Freece,* for appellant.

*H. J. Snively,* for respondent.

PARKER, J.—The plaintiff, Mrs. Stuhlmiller, com-
menced this action in the superior court for Yakima
county seeking foreclosure of a chattel mortgage held
by her upon a crop of fruit grown in 1924, which mort-
gage was executed by the defendant Mr. Stuhlmiller,
on July 3, 1924, to secure an indebtedness owing by
him to her.  By consent of all parties, a receiver was
appointed to harvest and market the fruit crop, which
was accordingly done.  The C. M. Kopp Company in-

[1]Reported in 248 Pac. 393.

tervened in the action, seeking foreclosure of a chattel mortgage given to it by Mr. Stuhlmiller on November 2, 1923, purporting to mortgage the same 1924 crop, to secure an indebtedness owing to it by him, on which there was still a considerable sum remaining unpaid.

The controversy with which we are here concerned is only between Mrs. Stuhlmiller and The C. M. Kopp Company, as to which has the superior mortgage lien upon the 1924 crop; or, rather, as to which has the superior right to the proceeds of that crop, it having been reduced to money by the receiver's sale thereof. The superior court, following a trial upon the merits, decreed the Kopp company mortgage to be void as to the crop of 1924 and Mrs. Stuhlmiller's mortgage to be a superior lien upon the crop of 1924, and therefore that she has superior right to the proceeds of that crop. From this decree, the Kopp company has appealed to this court.

The controlling facts, as we view this record, are simple, and may be summarized as follows: On November 2, 1923, Mr. Stuhlmiller entered into a contract with the Kopp company for the advancement of funds by it to him for the harvesting and marketing of his 1923 crop. That contract contained a mortgage clause reading as follows:

"Said shipper [Stuhlmiller] does hereby mortgage to the company [the Kopp company] all of the above described fruit crop or crops together with all fruit crops grown on said premises the next following season as security for the payment of the said above mentioned advances and debts now owing or hereafter to be owing from said shipper [Stuhlmiller] to the company [the Kopp company]; and the company [the Kopp company] shall be entitled to enforce its mortgage lien in the manner provided by law."

This document was duly executed as a chattel mortgage to secure the advances, and timely placed of

record as a chattel mortgage in the office of the auditor of Yakima county.

The 1923 crop was, at the time of the execution of this mortgage, being harvested, and a portion of it had already been placed in the Kopp company's warehouse for shipment. After the marketing of that crop by the Kopp company and the application of its proceeds to the indebtedness owing to it by Mr. Stuhlmiller, there remained unpaid of that indebtedness approximately $600. It is this balance due on that indebtedness which the Kopp company claims is secured by its mortgage upon the 1924 crop here in question.

On July 3, 1924, Mr. Stuhlmiller executed and delivered to Mrs. Stuhlmiller a chattel mortgage on the 1924 crop, being the same crop purporting to be covered by the mortgage of November 2, 1923, given by Mr. Stuhlmiller to the Kopp company. This mortgage given by Mr. to Mrs. Stuhlmiller secured an indebtedness owing by him to her, amounting to $6,000, and some additional advances made by her to him to aid in the caring for, harvesting and marketing of the 1924 crop.

[1, 2] Our chattel mortgage statute, so far as we need here notice its language, authorizes the making of chattel mortgages as follows:

"Mortgages may be made . . . upon growing crops and upon crops before the seed thereof shall have been sown or planted: Provided, that the mortgaging of crops before the seed thereof shall have been sown or planted, for more than one year in advance, is hereby forbidden. . . ." Rem. Comp. Stat., § 3779 [P. C. § 9759].

In *Kennewick Supply & Storage Co. v. Fry,* 133 Wash. 341, 233 Pac. 658, 236 Pac. 808, we held the mortgaging of tree fruit crops to be authorized only by the statutory authorization of the mortgaging of

"growing crops," and that a mortgage given in March, 1922, could not become a valid lien upon a 1923 crop, though, in terms, to that effect.. It was in that case sought to show that the 1923 crop was in fact growing at the time of the execution of the mortgage in March, 1922, because of the then formation of so-called "fruit spurs," which would produce the fruit of the crop of 1923. In that decision Judge Mitchell, speaking for the court, said:

"It is alleged in the amended complaint that, in the year prior to the date of appellant's mortgage, buds had formed on the fruit trees which after July 1, 1922, developed into what are known as fruit spurs, and that in the spring of 1923, prior to the date of the mortgage to the respondent, 'the fruit buds and blossoms had developed from the fruit spurs and the crop of 1923 was produced from such buds and blossoms.' Therefrom it is argued on behalf of the appellant that on March 11, 1922, the date of its mortgage, the crop of 1923 had a potential existence sufficient to make it property that could be properly covered by a chattel mortgage. If necessary, it could with equal propriety be said, we think, that earlier than 1922 when the tree was growing the limbs on which the apples were borne in 1923, or when it was nursery stock, it contained the rudiments of the crop of 1923."

It is attempted to differentiate this case from that case by the introduction of expert testimony tending to show the formation of so-called "fruit buds" prior to November of each year, which mature into the fruit of the following year; thus attempting to show that the Kopp company's mortgage of November 2, 1923, was, in fact, given upon the then growing crop of 1924, as well as upon the crop of 1923. The alleged maturing of the so-called "fruit buds," to the extent of being then possible to differentiate from other growths upon the trees during the summer or early

fall of the year preceding the year of the maturing of the fruit, is, to our minds, only an attempted differentiating in degree of that growth upon the trees from the other growths, then going forward upon the trees which may make for the fruit crop of the following year.

Such refinement of distinction would carry us back indefinitely, and render the statutory authorization of the mortgaging of growing crops impractical of determination as to its operation. We can judicially take notice of the fact that fruit trees in this state undergo, during the winter months, a period of dormant life; and we think that it cannot be held that the commencement of the formation of the "fruit buds" in a given year constitutes a portion of the period of the growing of the crop of the succeeding year, any more than it can be held that the growth of the tree in other respects during the prior years of its life constitutes a part of the period of the growing of the crop of succeeding years. We think the reasoning of our decision in *Kennewick Supply & Storage Co. v. Fry, supra,* is decisive of this case in favor of respondent Mrs. Stuhlmiller. Just when the growing crops of fruit on such trees first become growing crops subject to being mortgaged, we need not here decide, but, at all events, it is not a growing crop within the meaning of our chattel mortgage statute at any time prior to the preceding dormant winter period.

The decree of the trial court is affirmed.

TOLMAN, C. J., MACKINTOSH, MITCHELL, and ASKREN, JJ., concur.